FRANK JOHNSON, Petitioner, v. HONORABLE HAROLD V. LEVIS, Judge, Respondent.

No. 47442.

(Reported in 38 N. W. 2d 115)

JUNE 14, 1949.

W. K. Cash, of Albia, for petitioner.

Frank A. Nichol, of Albia, for respondent.

SMITH, J.—The divorce case of Maxine Johnson v. Frank Johnson was commenced and tried in the district court of Monroe County. Respondent, a judge of that court, presided. Both parties sought a decree of divorce and for custody of the minor children. At the close of all the evidence respondent refused to grant a divorce to either party but adjudged that "plaintiff, until

the further order of the court, have custody of the two minor children of plaintiff and defendant * * * with right given to defendant to visit said children at all reasonable times" and "that until the further order of this court, defendant pay to the clerk of this court for the support of said two minor children the sum of $15 per week to be paid to the plaintiff."

Respondent also ordered and adjudged: "that the court retain jurisdiction of this cause for further appropriate orders as to the general welfare of said two minor children, and they are placed under the general supervision of the Acting Child Welfare Director of Monroe County, Iowa—but in custody of their mother —report to be made by the said Acting Child Welfare Director once each ................ as to the well-being of said children."

No appeal has been taken from the decision in said suit and we cannot here inquire into the merits of the case or the justice or wisdom of the result. The defendant therein brings this proceeding as petitioner to test the *right* of the court to make this order as to custody and support of the children while denying divorce to both parties. The *validity* of the order is the sole issue here.

I. Our statute in the chapter on divorce provides:

"*When a divorce is decreed,* the court may make such order in relation to the children *. * * and the maintenance of the parties as shall be right. [Italics supplied.]

"Subsequent changes may be made by it in these respects when circumstances render them expedient." Section 598.14, Code of 1946.

Clearly this language does not authorize an order for child custody in a divorce proceeding in absence of a divorce decree. By implication it denies the existence of such power. The implication becomes certainty when we read the quoted section in connection with section 668.1, Code of 1946, which says: "Parents are the natural guardians of the persons of their minor children, *and equally entitled to their care and custody.*" The predecessor of section 668.1 as found in the Code of 1851 and the Revision of 1860, gave the father priority over the mother. Section 598.14 states the law as it has stood at least since 1851, permitting the

court in a divorce case to change the statutory equality of custodial right·"when a *divorce is decreed*."

The conclusion is inescapable that the legislature intended no adjudication of custodial rights in a divorce proceeding in the absence of a legal separation. ·This court has consistently acted on that assumption. · See Porter v. Porter, 190 Iowa 1126, 181 N.W. 393; Goecker v. Goecker, 227 Iowa 697, 288 N.W. 884; Garrett v. Garrett, 114 Iowa 439, 87 N.W. 282.

In each of these cases the trial court's decision, decreeing custody while denying divorce, was reversed on appeal. In Porter v. Porter we said, referring to the language of the Code section (now 598.14, supra):

"This power is given as incidental to the power to grant a divorce in the divorce proceeding. The matter of awarding the children is specifically conferred under this statute only in the event that a divorce is granted. Such power is not conferred as an incident to the ordinary action for divorce, where the divorce is not granted." (190 Iowa at page 1129, page 395 of 181 N.W.)

The opinion in Oliver v. Oliver, 216 Iowa 57, 58, 248 N.W. 233, 234, in upholding on appeal a custodial and property decree in connection with a divorce decree, says: "In a suit for divorce, the property rights of the parties and custody of the children cannot be adjudicated, unless a case is made warranting a decree of divorce, and can only be affected in a decree granting a divorce or separate maintenance."

As said in the Porter case, supra, at page 1130 of 190 Iowa, "cases from other courts are of comparatively little value * * * because of the variance in the statutes of the several states." See 17 Am. Jur., Divorce and Separation, section 677; 27 C. J. S., Divorce, section 207.

II. The foregoing would be conclusive here had the case come to us on appeal. But this is certiorari. Petitioner has the burden of showing respondent has exceeded his "proper jurisdiction or otherwise acted illegally." Rule 306; Iowa Rules of Civil Procedure. Is the order complained of merely erroneous or is it actually invalid as being beyond the jurisdiction and power of the district court in a divorce case?

In the case of Goecker v. Goecker, supra (227 Iowa, page 701, 288 N.W., page 886); it is said:

"We decline to enter upon a discussion of the power of the trial court to make the order concerning the custody of this child where a divorce is denied. This matter has been heretofore considered by this court. [Citing cases.]

"In this case, we simply say, under the record, the trial court's order is unjust and inequitable and, hence, erroneous."

The cases cited are Oliver v. Oliver, Porter v. Porter, and Garrett v. Garrett, all supra, and Mollring v. Mollring, 184 Iowa 464, 167 N. W. 524.

The Mollring case is cited in respondent's brief to the proposition that the district court has inherent power to adjudicate custodial rights of infants and that as the issue was tendered there was "in some part of the court * * * power to determine the custody of the child, and no reason why the parties should be compelled to go before the same judge in another court and present the same question."

But the Mollring case is easily distinguishable from the instant case and those heretofore discussed. In it the defendant not only answered the plaintiff's petition for divorce but he filed a cross-petition alleging he had already secured a divorce from plaintiff in another state and praying only that he be awarded custody of the children. The issue of custody, independent of and not incidental to the divorce suit, was thus squarely raised and was litigated by the parties without objection. As to that issue the case stood as if defendant had commenced a separate suit in equity, alleging the parties were divorced, and invoking the original chancery jurisdiction over child custody. The following language of the opinion gives the clew to the decision:

"If, then, all there was in the case was a suit for divorce and a dismissal of the petition, there was no power in the divorce court to make custodial orders. And Davis v. Davis, 75 N. Y. 221, amounts to a holding that, when all that is present is a dismissed petition for divorce, there is no power to award the custody of children, and such power is not conferred by a statute which em-

*powers the court to make orders 'during the pendency of the cause or at its final hearing or afterward.'* [Italics supplied.] But * * * it does not follow that the court had no inherent power to deal with the custody of infants. * * * The chancery court has original jurisdiction over the custody of infants as *parens patriae.*" (184 Iowa at page 471, page 527 of 167 N.W.)

In effect the opinion held that because the defendant, without seeking a divorce, but contending a legal divorce had already been granted, sought custody of his children at the hands of the chancellor, and because no procedural objection was urged and the question was actually litigated independent of the divorce jurisdiction and independent of the grounds for divorce, the court of equity had power to adjudicate it. The opinion is long and not easy to analyze but we believe we have correctly stated its substance. Only when so interpreted can it be harmonized with our other decisions heretofore referred to. See analysis of the Mollring case in Porter v. Porter, supra, where it is pointed out that evidence on the question of custody was offered by both parties after the court announced it would deny plaintiff a divorce. (190 Iowa at page 1128.)

The case is clearly not an authority in support of respondent's contention here when it says: " If, then, all there was in the case was a suit for divorce and a dismissal of the petition, there was no power in the divorce court to make custodial orders." We expressly approved this pronouncement in Porter v. Porter, supra (190 Iowa at page 1129). There was nothing in the instant case but a suit and a cross-petition for divorce, both denied. True, each party included in his prayer for divorce the usual request for custody. That issue is inherent in every divorce case where there are minor children, whether expressly raised or not. Zuver v. Zuver, 36 Iowa 190. Certainly there was no invocation here of any inherent power of equity apart from or independent of the divorce issues.

It may be conceded there is much discord in the cases. See annotations:. L. R. A. 1917D 976; 35 L. R. A., N. S., 1159; 113 A. L. R. 902; and 151 A. L. R. 1380. It would be indeed difficult to determine on which side lies the numerical weight of authority.

The annotators in both 35 L. R. A., N. S., and L. R. A. 1917D express the opinion the cases are quite evenly divided. See also 17 Am. Jur., Divorce and Separation, section 677, and Cumulative Supplement. Variations in statutes and in procedural manner of approach would have to be taken into account as well as the differences in circumstances of the multitude of cases. To attempt such an appraisement here is neither necessary nor desirable.

Our own decisions definitely place us on the side of those jurisdictions in which the right to make custodial orders is denied when no divorce or separate maintenance decree is granted, except in the unusual case (such as Mollring v. Mollring, supra) in which the issue is presented independently of any prayer for divorce and under pleading and proof indicating there had already occurred a legal separation of the parents.

A custodial and support decree where there is no legal separation of the parents would seem incongruous. It would give judicial sanction to a breaking up of the home where neither party is entitled to a divorce or a decree of separate maintenance. It would make the divorce case a sort of guardianship proceeding for litigating the custodial and support question between parties who, under our statute, are the natural guardians of their minor children "and equally entitled to their care and custody." If children are being neglected or are delinquent or dependent there is an appropriate method of having them cared for.

We are not willing to adopt a rule that would give either party in a divorce or separate-maintenance case a priority over the other of custodial right when there is no adjudication upon statutory grounds authorizing one to live separate from the other. We think our statutes and prior decisions deny such power to the court in a divorce suit.

The writ is accordingly sustained.—Sustained.

HALE, C. J., and MULRONEY, WENNERSTRUM and HAYS, JJ., concur.

GARFIELD, BLISS and OLIVER, JJ., dissent.

MANTZ, J., not sitting.

GARFIELD, J. (dissenting)—I respectfully dissent.

While the majority decision may at first seem plausible or perhaps unavoidable, further consideration leads to the conclusion it is not required or justified by Code section 598.14 or section 668.1 or by our prior decisions and is opposed to the trend of authority in other jurisdictions which the majority deems. it neither necessary nor desirable to consider.

I.   Petitioner's cross-petition in the divorce suit and his wife's reply thereto allege in effect the parties had separated. We were told in oral argument without denial they had separated.

The wife's petition in the divorce action states, "defendant [petitioner here] * * * has been guilty of physical and mental abuse of both plaintiff and their children; plaintiff has at all times had custody of said two children and is a fit and proper person to continue their care." The prayer of her petition asks in separately designated paragraphs (a) an injunction restraining defendant (petitioner) from further abuse of plaintiff or their children (b) an order requiring defendant to furnish moneys for support of plaintiff (wife) and their children (c) custody of the children (d) divorce, and (e) *general equitable relief.*

Petitioner made no attack upon the above pleading but joined issue therewith by answer and cross-petition which state in part: the children are less than eight years old; plaintiff neglected them; "plaintiff is not a fit and proper person to have custody of the children"; defendant is such a person and is able and willing to take them and give them a proper home. His prayer is for a divorce, the custody of the children and such other and further *equitable* relief as seems just and proper.

In a verified reply the wife states defendant (petitioner) abandoned his home, plaintiff and the children, denies his allegations of her neglect of the children and of her unfitness and his fitness to have their custody and prays the dismissal of his cross-petition.

It appears that after some testimony in the divorce suit had been taken, at respondent's suggestion and *by agreement of the parties,* it was ordered: the cause was continued for thirty days to enable the parties to settle their differences; custody of the children was temporarily awarded the wife during such continu-

ance; defendant was to pay $15 a week for support of the chil-. dren and was given the right of visitation; jurisdiction was reserved to make such future orders as shall appear necessary and equitable.

A month and eleven days after the continuance was granted (to quote from the judgment) "further evidence was presented by both parties on the issue of divorce *and the issue of custody of the children*." A divorce was denied each party, custody of the children was left with the wife as it had been, with right of visitation in petitioner, he to pay $15 a week for their support.

In this certiorari proceeding (commenced long after the time allowed for appeal by Rule 335, Rules of Civil Procedure) defendant-petitioner's sole contention is that the order for custody of the children is without jurisdiction for the reason a divorce was denied either party. While the evidence is not before us, it must be presumed the order is justified by the testimony and that respondent acted for the best interests of these young children in continuing their custody in their mother who says she has had it at all times. Respondent's memorandum opinion includes the statement petitioner is "under the physical disability of chronic diabetes."

II. I cannot agree with the majority holding that by implication Code section 598.14 denies the existence of the power exercised by respondent here and that our previous decisions conclusively support petitioner's contention.

The earliest decision cited by the majority to sustain its position is Garrett v. Garrett, 114 Iowa 439, 87 N. W. 282. There the wife was denied a divorce by the trial court but was awarded custody of a son (age seventeen) for whose support the husband was ordered to pay $1175. Upon appeal by the husband the order for custody and support was held *erroneous*. There is no intimation in the opinion the trial court was without power, because a divorce was denied, to make the order for custody or support. On the contrary the questions of custody and support were considered by us and decided on their merits, not on the basis of lack of jurisdiction in the trial court. It is obvious our decision could easily—and probably should—have been based on such lack of jurisdiction if we were of that opinion.

Aside from Mollring v. Mollring, 184 Iowa 464, 167 N.W. 524, which the majority attempts to distinguish, Porter v. Porter, 190 Iowa 1126, 181 N.W. 393, is our next decision cited to support the majority holding. There a wife was denied a divorce but was awarded the custody of her children. On appeal by the husband the award was reversed. It is true we stated, *under the circumstances of that case,* the order for custody was without jurisdiction.

It may be said of the Porter case: (1) There was no appearance for the wife in this court—only the husband's side of the controversy was presented to us. (2) The opinion emphasizes and calls attention at least four times to the fact the only pleading for defendant-husband was a general denial—there was no cross-petition asking either divorce or custody of the children. (3) As stated at page 1129 of the Porter opinion, the "petition did not contain one word in respect to the fitness of either party to act as custodian for the children." (4) To quote from page 1127 of the opinion, "neither party offered any testimony whatever in regard to the custody of the children, or respecting which one of said parties was a more proper custodian." (5) While the opinion does say the trial court was without jurisdiction to make the order for custody it also states the trial court was in error in so doing. (6) The decision, whether it is that the trial court was without jurisdiction or was merely in error, is carefully limited to the circumstances of that case, especially the issues and proof.

It is apparent that in the Porter case no such issues were raised by the pleadings or gone into by the evidence as was done in the lower court here. I think the present controversy resembles Mollring v. Mollring, supra, much more than it does the Porter case.

In Oliver v. Oliver, 216 Iowa 57, 59, 248 N.W. 233, 235, cited by the majority, the trial court granted a divorce and awarded custody of the children on the husband's cross-petition. Pending the wife's appeal to this court, the husband died, but we considered the award of custody on its merits, held it "was for the best interests of the children, under the circumstances then surrounding them," and affirmed it. The excerpt from the Oliver opinion quoted by the majority seems to be dictum, unnecessary to the

decision. It cites no authority and is not an unequivocal, considered pronouncement in support of the majority holding.

Goecker v. Goecker, 227 Iowa 697, 288 N.W. 884, is the latest decision cited. As the majority's quotation from the Goecker opinion indicates, we there declined to discuss the power of the trial court to make an order for custody of a child where a divorce is denied, and held merely that under the record such an order was unjust and inequitable and hence erroneous. This seems quite inconsistent with the majority's holding that our own decisions under the circumstances here definitely deny to trial courts jurisdiction to make custodial orders when no divorce is granted.

The majority strenuously attempts to distinguish Mollring v. Mollring, supra, 184 Iowa 464, 167 N.W. 524, on the ground the husband there had procured a divorce in another state, raised the issue of custody independent of divorce in the wife's divorce suit in Iowa and invoked the original chancery jurisdiction over child custody. We are told this was not done here by either party. It is true Mollring had been divorced in Missouri and it was therefore unnecessary for him to seek a divorce in Iowa. But this court gives little if any weight to that circumstance either in the Mollring opinion or in the extended discussion thereof in Porter v. Porter, supra, 190 Iowa 1126, 181 N.W. 393.

The question for decision in the Mollring case is thus stated in the opinion (page 469 of 184 Iowa, page 526 of 167 N.W.), after quoting what is now Code section 598.14 upon which petitioner here relies:

"The exact question at this point is whether, where there is a cross-petition asking affirmative relief as to custody, this statute provision works that there is no jurisdiction to make custodial orders if divorce is denied. *This question might well have been determined in Garrett v. Garrett,* 114 Iowa 439, but it was not done; and a reversal in it ensued because it was held the evidence did not justify the order made." (Italics added.)

There had been no previous divorce granted the husband in the Garrett case nor can it be asserted the issue of child custody there was raised independent of the wife's suit for divorce. The

majority's attempt to distinguish the Mollring decision cannot be reconciled with the foregoing quotation.

To quote further from our Mollring opinion (commencing on page 471 of 184 Iowa, page 527 of 167 N.W., where the majority's quotation ends):

"And it was held in Cowls v. Cowls, 3 Gilman (Ill.) 435, that such statute as we have [now 598.14] confers no new authority or jurisdiction upon the chancery court. Where the question is the right to the permanent custody of children, the chancellor may, by virtue of his inherent jurisdiction, as public guardian of infants, fix their status in habeas corpus proceeding. Buckley v. Perrine, 54 N. J. Eq. 285 (34 Atl. 1054). So, then, though the divorce court has no power to settle custody, if all there is is a dismissed petition for divorce, it is still true that the district court of Iowa has other functions than determining divorce suits, and, as a district court, has inherent power to fix the permanent custody of infants.

"The exact question remaining is this: Though the divorce court has no power to make a custodial order upon denying the divorce, did the district court, though it had general chancery powers, lack jurisdiction to settle the custody of this child, on a cross-petition, whose filing or contents were in no manner challenged, and which prayed that the defendant have such custody, and where the parties voluntarily litigated whether or not defendant, rather than the plaintiff, was entitled to such custody? * * * [This last sentence is quoted in Porter v. Porter, supra, at page 1128 of 190 Iowa, page 394 of 181 N.W., as stating the proposition presented in the Mollring case.]

"No objection to the forum was made. No transfer was asked. * * * We can perceive no good reason why these suitors, who were contending before the district judge over which one was the fit custodian of this child, should be denied a hearing on their evidence and be driven away, when they could go before the same judge again, make the same issue,—say, on habeas corpus,—put in again their evidence, and be entitled to the very decision the same judge had just declined to make. We will not interfere merely because the court did not indulge in the useless thing of

declaring that it would not pass upon a matter on which all the testimony the parties had, had been submitted, in order that, when reapproached by the parties, the same judge, having the same question to settle, might then retake the same proof, and then entertain the controversy. [This sentence is also quoted with approval in our Porter opinion, page 1128 of 190 Iowa.]

"And we think that our position is fully supported by authority in other jurisdictions."

I think Mollring v. Mollring, supra, definitely holds that what is now Code section 598.14 confers no jurisdiction upon the chancery court with reference to custody of children that it did not have before the statute was enacted; that such court has inherent jurisdiction to settle the custodial rights of children; that where such issue is litigated by the parties without objection by pleading and proof in a suit where a divorce may also be asked, the trial court may decide the issue without relegating the parties to some other form of action such as habeas corpus in which the issue admittedly could be decided by the same court. And I think such holdings are both sensible and sound, are fully supported by authority and we should now adhere to them.

The decision in the Mollring case is all the more applicable now that habeas corpus, involving the custody of minor children, has come to be firmly recognized in this state as essentially an equity proceeding although this was not true as recently as in Knochemus v. King, 193 Iowa 1282, 1285, 188 N.W. 957. See Ellison v. Platts, 226 Iowa 1211, 1215, 286 N. W. 413, and citations; Allender v. Selders, 227 Iowa 1324, 1334, 291 N.W. 176.

The majority would give controlling weight to the circumstance that in the Mollring case the husband asked no divorce while here the petitioner's prayer also included one for divorce. Apparently the majority would hold that if either litigant here had not asked a divorce along with the other relief sought, the order for custody and support would be an exercise of the court's inherent jurisdiction over such matters. Upon what sound basis can it be held that the inherent jurisdiction of chancery over the custody of infants is ousted by the inclusion of a prayer for

divorce in the prayer of each litigant for child custody and other general equitable relief?

7 Iowa Law Bulletin 117, 118, analyzes Porter v. Porter, supra, 190 Iowa 1126, 181 N.W. 393, which must be the principal decision upon which the majority relies, Mollring v. Mollring, supra, and Garrett v. Garrett, supra, 114 Iowa 439, 87 N.W. 282. These conclusions are there reached, quite at variance from the conclusion the majority holds is unavoidable:

"The analysis of these three cases shows that the Iowa court does not consider itself divested of power to make orders concerning the custody of children, when a divorce is refused.

"This holding is justifiable since the district court is not alone a divorce court but has the powers of a chancery court also. The chancery court has original jurisdiction over the custody of infants as parens patriae. [Citations.] As has been well stated: 'It seems a useless circuity to refuse to determine this question in an action in which the parties are before the court and their domestic affairs have been judicially investigated when the same question may be presented to and determined by the same court in a different proceeding.' [Citations.]

"From a consideration of the cases, in which the Iowa court has dealt with this question, it is apparent that the court does not feel itself divested of jurisdiction when a divorce is refused, but does demand that the question be raised by the pleadings and developed by the evidence."

III. Since the majority obviously concedes a court of equity has inherent jurisdiction over child custody which is not denied to it by Code section 598.14, citation of authorities which so hold in addition to our Mollring opinion, supra, is perhaps unnecessary. However, in our recent case of Addy v. Addy, 240 Iowa 255, 260, 36 N.W. 2d 352, 356, it is held, "It is firmly established that equity has inherent power to protect the rights of minors. Ex parte Badger, 286 Mo. 139, 226 S.W. 936, 14 A. L. R. 286, 291-293, and citations; [other citations]." Much of the argument for appellant in the Addy case closely follows petitioner's argument here but was not upheld.

Ex parte Badger, supra, cited with approval by us as above,

is a leading decision which states (at pages 291–293 of 14 A. L. R.):

"Jurisdiction as to custody of minors * * * -exists and has been exercised by courts of equity for more than two centuries in England, and in the different states of this Republic for shorter periods of time * * *.

"It will be seen, not only from the lucid text of Pomeroy, but from the adjudicated cases, that the inherent power of a court of equity over the persons and estates of infants is very wide. [Citation.] While it is technically true that a requisite to jurisdiction is that the infant must be a ward of the court * * * any proceeding or application in equity relating directly to the infant is sufficient. [Citations.] *Statutory regulations as to the custody and care of infants will not affect the court's jurisdiction.* [Citations.] * * *

"In numerous other cases where a decree of separation was sought and denied, the courts have nevertheless awarded the custody of minor children to one parent or the other as the facts warranted. [Citations.]" (Italics added.)

Another leading case, Urbach v. Urbach, 52 Wyo. 207, 218, 73 P. 2d 953, 957, 113 A. L. R. 889, 893, holds, "But it has been recognized for several centuries that, independent of any statute, the custody of minor children is one of the recognized subjects of which a court of equity will take cognizance in the proper case."

IV. The majority states: "There was nothing in the instant case but a suit and a cross-petition for divorce, both denied. * * * Certainly there was no invocation here of any inherent power of equity apart from or independent of the divorce issues." In its final analysis the majority opinion rests upon this arbitrary assertion, in plain conflict with the record as pointed out in Division I hereof. The pleadings of both parties and, so far as we know, their evidence treat the issue of child custody as of vital importance.

If these parties did not invoke the inherent power of equity it is difficult to conceive how that may be done. The only basis for the quoted assertion of the majority is that a prayer for divorce is included in the prayer of each party. But this fact did

not prevent the parties from litigating, nor deprive the trial court of jurisdiction to decide, the issue of child custody. Respondent did not cease to act as a court of equity in hearing and determining this controversy merely because the parties asked a divorce.

Every experienced lawyer knows and our records demonstrate that the matter of child custody is frequently the main controversy in actions in which a divorce is sought. There is no basis for holding here such issue is of only incidental importance. The issue of child support is as important here, so far as shown by the pleadings and presumably by the evidence, as in any case in which divorce is asked.

Pertinent is this language from Urbach v. Urbach, supra, at page 900 of 113 A. L. R.:

"In innumerable cases there would be no contest in a divorce action, were it not on account of the question of custody and support of the children. In many cases *the latter question is in reality the main and primary question* in the case, and when that is true it may well be said that the question of divorce is the incidental and minor point involved therein. * * * Whether it is or not would seem to depend on one or both of two factors, namely, (1) the scope of the pleadings, and (2) the trial. If the pleadings are sufficient to sustain the judgment * * * and the parties have litigated the points, then no good reason is perceived why they should be turned out of court merely to commence another proceeding, and thus relitigate the matter." (Italics added.)

V. As the majority observes, notes in 35 L. R. A., N. S., 1159, and L. R. A. 1917D 976, state the cases upon the question are quite evenly divided. However, it is believed the trend of recent authority is definitely opposed to the narrow view expressed by the majority.

39 Am. Jur., Parent and Child, section 18, page 606, says:

"The idea seems to have prevailed in some of the early decisions that a court could not give the custody of children to the mother and require the father to provide for their support except as an incident to a decree of divorce or separation. *This, however, is clearly not the law at the present time.*" (Italics added.)

2 Schouler, Marriage, Divorce, etc., Sixth Ed., section 1882, states:

"It is often held in this country that the court cannot make decrees concerning the custody of children where a divorce is denied, but can do so only during the pendency of the suit, or upon a final hearing where the divorce is decreed, as jurisdiction in divorce is statutory in this country. It seems to be the modern rule, however, that the custody of the children can be granted to one of the parties where a divorce is denied, but these decisions rest either upon a statute conferring such power, *or upon supposed general equity powers* of the court, as where both parties are equally in the wrong. [Italics added.]

"The early decisions which held in accordance with the former common-law rule, that the court could not give the custody of the children to the mother and require the father to provide for their support, except as an incident to a decree of divorce or of separation, are not in harmony with the present state of the law * * *."

2 Nelson on Divorce and Annulment, Second Ed. (1945), section 15.34, page 221, observes:

"But it is not denied that the court has jurisdiction to fix the custody in a subsequent proceeding by habeas corpus or in a subsequent suit in equity, and it seems useless to deny the relief in a divorce case and grant it in another suit for the same purpose in states where the different forms of action are abolished. When the parties are before the court and their domestic affairs have been subject to judicial investigation, it would seem to be the proper time to adjudicate the rights of the parents to the custody of their children, as the court has jurisdiction of the parties and the subject-matter. In some states this relief will be granted when a divorce or separate maintenance is denied."

The authorities are thus quite well summarized in 27 C. J. S., Divorce, section 307:

"On denial of a divorce, the court can make no provision for the custody or support of the children if such relief is merely incidental to the divorce proceedings, but it may do so if its power

is derived from a source other than its jurisdiction of the divorce proceedings, such as from express statute *or through inherent equitable powers.*" (Italics added.)

As stated in Division III hereof and as the majority seems to concede, equity courts in this state clearly have inherent power to provide for the custody of children.

A carefully considered decision which upholds the power of the trial court to award child custody even though divorce is denied is Urbach v. Urbach, supra, 52 Wyo. 207, 73 P. 2d 953, 113 A. L. R. 889, which quotes at some length from Mollring v. Mollring, supra, 184 Iowa 464, 167 N.W. 524. In the Urbach case the husband filed merely a general denial to his wife's petition for divorce which also sought child custody. A statute, section 35-117, Rev. St. 1931, provided (to quote from the opinion, at page 893 of 113 A. L. R.), "the court may make disposition of and provision for children, in 'granting a divorce.' " With reference to decisions similar to the majority holding here the Urbach opinion observes (at page 897 of 113 A. L. R.), "* * * the cases show, we think, the thinness of the thread of reasoning upon which the cases from New York, and other like cases, depend." In regard to the statutory provision above referred to, the opinion holds (at pages 897, 898 of 113 A. L. R.):

"But the mere fact that a statute authorizes the exercise of a power in such statutory proceeding cannot, *unless there is a specific provision to the contrary,* be considered as a general limitation upon the exercise of such power which is granted in another statute *or under principles of equity,* that is to say, that the power cannot be exercised except only in the statutory proceeding and under the limitations prescribed therefor. * * * Hence the grant of power under our section 35-117, supra, to provide for the custody and care of children in connection with a decree granting a divorce, does not abrogate the *equitable powers of the court existing independent thereof,* nor does it limit the exercise of the power granted in another statute under somewhat different circumstances." (Italics added.)

The Urbach opinion refers to cases from New York as op-

posed to its holding. The rule formerly prevailed in New York that there was no jurisdiction to award child custody where a divorce was denied. Davis v. Davis, 75 N. Y. 221. But in 1941 this rule was abrogated by statute. See Caldwell v. Caldwell, 298 N. Y. 146, 152, 81 N.E. 2d 60, 64, which points out that the former rule was based on the New York law that, "In matrimonial actions, the courts of this state have only such powers as are conferred upon them by statute. * * * Hence, the power of the supreme court to grant a judgment of separation and of support for the wife and support and maintenance for the child is derived solely from the statutory law of this state." This is contrary to the rule that has prevailed in Iowa for over seventy-five years that equity has inherent jurisdiction to grant separate maintenance independent of any suit for divorce and irrespective of any statute. Addy v. Addy, 240 Iowa 255, 260, 36 N.W. 2d 352, 356, and citations.

Urbach v. Urbach, supra, and Ex parte Badger, supra, 286 Mo. 139, 226 S.W. 936, 14 A. L. R. 286, are followed in Dovi v. Dovi, 245 Wis. 50, 13 N.W. 2d 585, 151 A. L. R. 1368 (Rosenberry C.J.). There both wife and husband asked a divorce and custody of the children. Divorce was denied but custody of the children was awarded the husband. Because a statute had been repealed which provided that although a divorce be denied the court might make suitable and proper order for the support and maintenance of the children, it was contended on appeal the award of custody was a nullity, a divorce having been denied. The contention was rejected. The opinion points out that at common law jurisdiction of divorce was in ecclesiastical tribunals which had no jurisdiction to determine the custody of children—this was in the chancery court. The opinion proceeds, at page 1373 of 151 A. L. R.:

"From what has already been said, it is apparent that when a statute was passed authorizing equity courts in divorce actions to determine the custody of children, it merely made applicable to divorce actions a jurisdiction which equity courts already possessed and which might have been exercised without the aid of a

statute. * * * Whether courts of equity in this state should now exercise that power is the question here for decision. * * *

"After consideration of the authorities it is considered and held that courts of equity have such jurisdiction and that where the question is presented to a court of equity in a divorce action and a divorce is denied, the court may properly exercise that jurisdiction."

The Dovi opinion (at pages 1373, 1374 of 151 A. L. R.) says of the above-mentioned statute which had been repealed: "It is procedural in character." The case is specially in point because the Wisconsin statute, similar to our Code section 668.1, provides: "Women shall have the same rights and privileges under the law as men in the * * * care and custody of children * * *."

Davis v. Davis, 194 Miss. 343, 345, 346, 12 So. 2d 435, 436, also expressly approves Urbach v. Urbach, supra. There Mrs. Davis sued for divorce and child custody. Her husband denied the grounds for divorce and asked continued custody of the child. Divorce was denied and custody awarded the husband. Upon appeal the wife questioned (to quote from the opinion) "the jurisdiction of the court to award custody when the prayer for divorce is denied." The Mississippi statute (to quote further from the Davis opinion) "authorizes the chancery court to make all orders touching the custody of children 'when a divorce shall be decreed.'" Our section 598.14 is practically identical. The challenge to the jurisdiction was rejected. The court states:

"This statute did not restrict but rather enlarged the jurisdiction of the chancery court. * * *

"That the equity powers thus recognized and established [by the state constitution] include the jurisdiction over infants, including the right and duty to protect their interests and welfare by decreeing their custody, should not be questioned." (Citations.)

Language in Walker v. Walker, 140 Miss. 340, 354, 105 So. 753, 756, 42 A. L. R. 1525, 1530, that "the prayer for the custody of the children in the bill and in the cross-bill, and for alimony,

is dependent upon a decree of divorce" is disapproved in the Davis opinion.

Other decisions which tend to support this dissent, although perhaps no statute similar to our section 598.14 may be involved, include Horton v. Horton, 75 Ark. 22, 86 S.W. 824, 5 Ann. Cas. 91; Duke v. Duke, 109 Fla. 325, 147 So. 588; Stewart v. Stewart, 156 Fla. 815, 24 So. 2d 529; Sauvageau v. Sauvageau, 59 Idaho 190, 81 P. 2d 731 (citing with approval Mollring v. Mollring and Urbach v. Urbach, both supra); Jacobs v. Jacobs, 136 Minn. 190, 161 N.W. 525, L. R. A. 1917D 971; Lolley v. Lolley, Tex. Civ. App., 181 S.W. 2d 941.

VI.   The majority observes, without the citation of authority, "A custodial and support decree where there is no legal separation of the parents would seem incongruous." In Power v. Power, 65 N. J. Eq. 93, 97, 55 A. 111, 113, cited and discussed with approval in Mollring v. Mollring, supra, 184 Iowa 464, 471, 475, 167 N.W. 524, it is stated by Vice-Chancellor Pitney, later of the Supreme Court of the United States:

"I see no incongruity whatever between the two results in such a case, where a husband and wife are living separately, for one of them to sue the other for divorce, and also for the custody of the children, and to fail to get the divorce and to recover the children in that petition. The claims are not incongruous * * *. I will repeat, There was no incongruity in the two claims * * *."

As stated, here the parties are living separately.

The majority states, "If children are being neglected or are delinquent or dependent there is an appropriate method of having them cared for." The majority doubtless has in mind Code section 232.5 in one of the chapters on Juvenile Court. If this is an intimation that a court of equity is without inherent jurisdiction to determine the custody of minors independent of any statute such as section 598.14, it is contrary to Addy v. Addy, supra, 240 Iowa 255, 260, 36 N.W. 2d 352, 356, and numerous other authorities. An argument based on section 232.5 very similar to that advanced by the majority here was expressly rejected by us in the Addy case. And if the quoted statement is an intimation that habeas corpus would not lie to determine the custody

of these children even though their parents may not be divorced, it is believed to be contrary to all authorities on the subject.

VII. The practical effect of the majority holding is to leave for future determination the matter of custody of these children of tender years whose parents unfortunately have separated. This result seems most undesirable as well as unnecessary.

It certainly is advisable to have the right to the custody of these children not left "up in the air." Until the question of cus-tody is determined on the basis primarily of the welfare of the children, each parent is equally entitled to their custody. Code section 668.1; Risting v. Sparboe, 179 Iowa 1133, 1137, 162 N.W. 592, L. R. A. 1917E 318; Allender v. Selders, 227 Iowa 1324, 1331, 291 N.W. 176. Of course children of tender years are usually better off with their mother. See Wood v. Wood, 220 Iowa 441, 446, 262 N.W. 773; Werner v. Werner, 204 Iowa 550, 212 N.W. 569. Nothing in section 668.1 purports to deprive a court of equity of its jurisdiction to determine the custody of minors irrespective of divorce.

As previously indicated, there is no doubt the right to cus-tody could be determined in habeas corpus. This is settled in all jurisdictions. Mollring v. Mollring, supra; 2 Schouler, Mar-riage, Divorce, etc., Sixth Ed., section 1882, page 2031; Jacobs v. Jacobs, supra, 136 Minn. 190, 194, 161 N.W. 525, 527, L. R. A. 1917D 971, 973, 974, and citations, a leading case, which states:

"It is also settled in all jurisdictions that, if for any reason a husband and wife have in fact separated and are living apart, the court, when its power is invoked by habeas corpus proceed-ings, may determine which parent shall have custody of the children * * *. [Citations.]

"As will be seen in the cases cited, this has become the uni-versal rule, and the custody of the children may be awarded to the wife under a writ of habeas corpus, if for their best interest, *although the husband has been guilty of no misconduct justifying a separation.*" (Italics added.)

The State v. Kirkpatrick, 54 Iowa 373, 6 N.W. 588, approves an award of child custody in habeas corpus to a wife who lived apart from her husband-defendant, although there had been

neither divorce nor legal separation. The opinion quotes what is now Code section 668.1 upon which the majority places reliance.

The question of custody could also be considered in a proceeding in juvenile court. Chapters 231, 232, Code, 1946; 39 Am. Jur., Parent and Child, section 18, page 606. Further, either parent could invoke the inherent equity jurisdiction of the court which the majority asserts was not done here. Any of these three proceedings would be heard by this same respondent, in the same court and the same forum—in equity. Lancey v. Shelley, 232 Iowa 178, 187, 2 N.W. 2d 781, 785, and citation; Code section 232.13.

To compel these parties to relitigate before the same judge, say in habeas corpus, this controversy which they once *voluntarily* litigated by pleading and proof and which has once been decided by a judgment that is not before us on the merits will not keep this home intact. That the issue of custody, according to all authorities, could be adjudicated by respondent in habeas corpus, without granting a decree of divorce to either parent, demonstrates the narrow basis for the majority's assertion that to allow respondent's decision to stand "would give judicial sanction to a breaking up of the home where neither party is entitled to a divorce or a decree of separate maintenance."

What possible difference can it make in the maintenance of the home or family whether the issue of custody is determined by respondent, as it was here, in a proceeding in which a divorce is asked but denied or in habeas corpus where no divorce is asked? At best the question involved is merely one of procedure and not, as the majority holds, of power or jurisdiction in the court.

Under the majority decision this mother is under no obligation to surrender these children to petitioner. She has fully as much right to their custody as petitioner has. Further, petitioner may not legally take the children by force from their mother. The only way petitioner may lawfully acquire their custody is to resort to habeas corpus, juvenile court, the inherent jurisdiction of equity or perhaps some other appropriate remedy. In any such proceeding the controlling question would be the welfare of the children. That very issue has been once tried

and determined by respondent. What useful or sensible purpose is served by compelling the parties to litigate the question again before respondent or another judge of the same court?

I would annul the writ.

BLISS and OLIVER, JJ., join in this dissent.